J-S56033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: I.E.M.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.N.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1237 EDA 2019 |

Appeal from the Decree Entered April 8, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000922-2017

BEFORE:  PANELLA, P.J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                **FILED DECEMBER 10, 2019**

Appellant E.N.W. (Mother) appeals from the decree granting the petition

of the Philadelphia Department of Human Services (DHS) to involuntarily

terminate her parental rights to I.E.M.C. (the Child), born in June 2015,

pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1]

Mother argues that the trial court erred in finding that she demonstrated a

settled intent to relinquish her parental claim to the Child.  We affirm.

The trial court set forth the relevant background and procedural history

as follows:

> On June 29, 2016, the Child was adjudicated dependent and
> committed to DHS because of present inability.  The family
> became known to DHS in June 2015 when DHS received a
> [General Protective Services (GPS)] report where the Child tested
> positive at birth for marijuana and [phencyclidine (PCP)].

---

[1] The Child's father, J.D.C. (Father), voluntarily terminated his parental rights.
Father did not appeal and is not a party to this appeal.

Consequently, "home services were implemented at that time." Subsequently, on March 24, 2016, DHS received another GPS report alleging that Mother has tested positive for PCP at Pathways and Pathways was planning on discharging [M]other from the program.

Based on those concerns, Danielle Johnson Kennedy, the Community Umbrella Agency (CUA) case manager, testified that her agency established a single case plan [(SCP)] that was periodically reviewed, throughout the life of the case. On September 20, 2017, DHS filed petitions to involuntary terminate Mother's parental rights to the Child pursuant 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b) and to change the Child's permanency goal to adoption. [Following several continuances, the trial court] conducted a combined termination and goal change hearing (collectively the "TPR" hearing) on April 8, 2019.[2] At the TPR hearing, Ms. Kennedy testified that Mother's [SCP] objectives were as follows: (1) attend a dual diagnosis program and attend [the clinical evaluation unit (CEU)] for screens, assessment, and monitoring; (2) obtain appropriate housing; (3) follow the visitation plan arranged by all parties; (4) comply with CUA; and

_____

[2] Prior to the TPR hearing, the trial court appointed Andre Martino, Esq., guardian *ad litem*, and Maureen Pié, Esq., child advocate, to represent the Child. Further, we note that the Child was three years old and could not express a preference in the outcome. Therefore, the Child's right to counsel under 23 Pa.C.S. § 2313(a) was satisfied. ***See In re Adoption of K.M.G.***, ___ A.3d ___, 2019 PA Super 281, 2019 WL 4392506 (Sept., 13, 2019) (*en banc*) (holding that (1) "this Court's authority is limited to raising *sua sponte* the issue of whether the orphan's court violated Section 2313(a) by failing to appoint **any** counsel for the Child in a termination hearing," and (2) we may not "review *sua sponte* whether a conflict existed between counsel's representation and the child's stated preference in an involuntary termination of parental rights proceeding" (citations omitted) (emphasis in original)). We add that there was no apparent conflict between the Child's best interests and legal interests. ***See id.; see also In re T.S.***, 192 A.3d 1080, 1089-90, 1092-93 (Pa. 2018) (reaffirming the ability of an attorney-guardian ad litem to serve a dual role and represent a child's non-conflicting best interests and legal interests); ***In re Adoption of L.B.M.***, 161 A.3d 172, 174-75, 180 (Pa. 2017) (plurality) (stating that, pursuant to 23 Pa.C.S. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for the child's legal interests, defined as a child's preferred outcome).

(5) attend [the Achieving Reunification Center (ARC)] for parenting and housing.

Ms. Kennedy stated that Mother understood that compliance with these objectives was a necessary step before reunification with the Child was to occur. With regards to Mother's compliance with her objectives, Ms. Kennedy testified that Mother completed ARC for parenting and housing. However, Ms. Kennedy also testified that Mother did not have stable housing. Ms. Kennedy further testified that Mother completed a CEU assessment that recommended a "long term dual diagnosis treatment" inpatient program at Gaudenzia Together House. Mother indicated she was not willing to do an inpatient program. However, Ms. Kennedy indicated that Mother was willing to engage in an outpatient dual diagnosis program. Ms. Kennedy further stated that Mother had not successfully completed [a] drug and alcohol treatment program. Ms. Kennedy also testified that Mother continued to test positive for marijuana and PCP.

Mother was initially offered weekly supervised visits with the Child, but those visits were changed to biweekly after Mother failed to attend any visits for a year. Ms. Kennedy testified that, even before the year hiatus, Mother had never been consistent with her visits and that those visits never progressed to unsupervised visits due to Mother consistently testing positive. With respect to the Child, Ms. Kennedy indicated that maternal cousin [(Foster Mother)] is the one that meets all of her general, medical, and emotional needs. Ms. Kennedy also indicated that the Child does not share a bond with Mother and does not look to Mother as a caregiver but rather sees [Foster Mother] as her mother. Ms. Kennedy further indicated that it would not cause irreparable harm to the Child to terminate the rights of Mother and that it is in the best interest of the Child to change the goal to adoption.

Trial Ct. Op., 7/17/19, at 1-3 (record citations omitted and some formatting altered).

In addition to the testimony summarized above, Mother testified that she no longer uses drugs and consistently attends a treatment program. N.T., 4/8/19, at 25. Mother also explained that she is currently employed and

actively seeking stable housing. *Id.* at 26. The child advocate explained that, though Mother has made some attempts to rectify the conditions leading to the Child's removal, "she has not been able to come to grips with what she needs to do in enough time to prevent harm to [the Child] should [the Child] have to be moved from the home she's been in now for three years." *Id.* at 30.

The trial court concluded that DHS presented clear and convincing evidence to involuntarily terminate Mother's parental rights and addressed Mother as follows:

> [W]e're in the same situation that we [were] in when you initially came in. The Child was born positive for PCP. Last month[,] you once again tested positive for PCP. You haven't changed your drug use at all. You don't have any housing. You said you just found out you're dealing with these mental health and drug issues . . . .
>
> From the moment this case came in . . . , [the trial court] has tried to help you. We sent you to a dual diagnosis continually to get mental health treatment. You said you're just finding out about your mental health issues. Well[,] we tried to help you but you didn't want our help.
>
> \* \* \*
>
> We sent you to the things that were going to be necessary for you to get yourself straight and to become a parent. But not only didn't you take advantage of them, you just disappeared out of the [C]hild's life for a year.

*Id.* at 31-32.

On April 8, 2019, the trial court entered a decree involuntarily terminating the parental rights of Mother under 23 Pa.C.S. § 2511(a)(1), (2),

- 4 -

(5), (8), and (b). On April 29, 2019, Mother filed a timely notice of appeal and a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Mother raises a single issue for our review:

Whether the trial court committed reversible error when it involuntarily terminated [M]other's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.[] § 2511(a)(1), (2), (5), and (8)?

Mother's Brief at 4 (full capitalization omitted).

Mother contends that she made progress toward her SCP objectives and demonstrated a willingness to remedy the conditions that led to the Child's removal. *Id.* at 11. Further, Mother argues that the trial court erred in finding that she exhibited a settled intent to relinquish her parental claim to the Child. *Id.* Based upon the foregoing, Mother insists that DHS did not present clear and convincing evidence that she failed or refused to perform her parental duties. *Id.*

In reviewing an appeal from an order terminating parental rights, we apply the following standard of review:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. [*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010)]. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court

might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

As we discussed in **R.J.T.**, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (some citations omitted).

The burden is on the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *Id.* (citation omitted).

Here, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b). Trial Ct. Op. at 1. However, this Court may affirm the trial court's termination of parental rights if any one subsection of Section 2511(a) and Section 2511(b) have been established.

*See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Accordingly, we initially focus our review on Section 2511(a)(2) which provides:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being and the condition and causes of the incapacity, abuse neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

The Pennsylvania Supreme Court has held that "when a parent has demonstrated a continued inability to conduct his or her life in a fashion that would provide a safe environment for a child . . . and the behavior of the parent is irremediable as supported by clear and competent evidence, the termination of parental rights is justified." *In re Adoption of Michael J.C.*, 486 A.2d 371, 375 (Pa. 1984).

In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

- 7 -

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted).

Further, "[t]he grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (citation omitted). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, 797 A.2d 326, 340 (Pa. Super. 2002) (citations and quotation marks omitted).

Instantly, the trial court found CUA case manager Danielle Johnson-Kennedy to be credible. Her testimony established that on June 8, 2015, DHS received a GPS report that the Child tested positive for PCP at birth and in-home services were provided for the family. *See* N.T., 4/8/19, at 6. Following a second GPS report, DHS obtained an order of protective custody for the Child. *Id.* at 6-7. Subsequently, DHS established SCP objectives for Mother. *Id.* at 9. Mother's SCP objectives remained unchanged throughout the life of the case. *Id.* 10. The SCP objectives called for Mother to follow a weekly visitation schedule. *Id.* Mother did not comply and her visits with the Child were sporadic throughout the life of the case. *Id.* at 15. Mother participated in her last weekly visit on August 30, 2017. *Id.* In October 2018, Mother's

visits were reduced from weekly to biweekly after Mother missed visits with the Child for over a year. *Id.* at 14-15.

Further, as part of the SCP, Mother understood that drug and mental health treatment and diagnosis were essential before reunification could occur with the Child. *Id.* at 10. However, Mother did not complete the required dual diagnosis assessment until several months after the termination petition was filed. *Id.* at 11. Mother's attendance in drug treatment programs was inconsistent. *Id.* at 13-14. Although Mother had begun regularly attending drug treatment just prior to the hearing, she continued to test positive for PCP. *Id.* at 14. At the time of the hearing, Mother had not obtained stable housing. *Id*. at 11. While Mother attended ARC's housing and parenting programs, she did not complete her other four SCP objectives. *Id.* at 10-11.

For these reasons, "[the trial court] found that Mother's failure to comply with CUA and consistently visit the Child has left the Child without essential parental care, and the cause of such neglect, refusal and continued incapacity will not be remedied by Mother." Trial Ct. Op. at 8. Our review reveals that the record supports the trial court's conclusion. *See M.E.P.*, 825 A.2d at 1272. Further, Mother's actions after DHS filed the petition to terminate were insufficient to show her ability to remedy the circumstances which lead to her continued incapacity. *See id.* at 1275. Accordingly, we conclude that the trial court's decision to terminate the parental rights of Mother pursuant to Section 2511(a)(2) is supported by competent, clear, and convincing evidence in the record. *See S.P.*, 47 A.3d at 826-27.

Mother does not challenge the trial court's analysis of Section 2511(b) in her brief. While we could find such an issue waived for failure to present an argument or cite legal authority, we will address the issue of the Child's best interests. **In re C.L.G.**, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*) (addressing the best interests of the child under Section 2511(b) *sua sponte*). **But see M.Z.T.M.W.**, 163 A.3d 462, 466 & n.3 (Pa. Super. 2017).

Section 2511(b) states:

> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b).

This Court has stated that the focus in terminating parental rights under Section 2511(a) is on the parent, but the focus of Section 2511(b) is on the child. **See C.L.G.**, 956 A.2d at 1008. In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." In **In re E.M.**, 620 A.2d [481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

- 10 -

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (some citations omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." ***In re Z.P.***, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citations omitted). Further, "in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists." ***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa. Super. 2010) (citation omitted).

As to Section 2511(b), the trial court determined that the Child would not suffer irreparable emotional harm if Mother's parental rights were terminated. Ms. Kennedy testified that she observed the Child's interactions with Mother and Foster Mother. N.T., 4/8/19, at 18, 21. Based on her evaluation of those interactions, Ms. Kennedy stated that the Child does not look to Mother as a caregiver and does not share a bond with her. ***Id.*** at 16. She further explained that Mother does not meet any of the Child's daily, emotional, or medical needs. ***Id.***

Ms. Kennedy testified that the Child has been in the kinship care of Foster Mother, a maternal cousin, since June 2016. ***Id.*** In that time, the Child has developed a caregiver bond with Foster Mother and calls Foster Mother "Mom". ***Id.*** at 17. Moreover, Foster Mother provides safety and stability for the Child and meets all of the Child's needs. ***Id.***

Based on our review of the record, we find no abuse of discretion or error of law in the trial court's decision to terminate Mother's parental rights under Section 2511(b). *See S.P.*, 47 A.3d at 826-27. The trial court considered the Child's needs and welfare, as well as the effects of termination on the Child. Accordingly, no relief is due.

In sum, we find that the trial court's decision to terminate Mother's parental rights under Section 2511(a)(1) and (b) is supported by competent, clear and convincing evidence in the record. *See id.*

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/10/19